IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CRIMINAL ACTION |
| Plaintiff | : | |
| | : | |
| v. | : | NO. 07-101 |
| | : | |
| FREDERICK ALBERT LYNCH, | : | |
| Defendant | : | |

**M E M O R A N D U M**

**STENGEL, J.**                                                                                   **April 6, 2009**

On December 17, 2008, after a three-day jury trial, defendant Albert Lynch was convicted of one count of being a felon in possession of a firearm and one count of being a felon in possession of ammunition in violation of 18 U.S.C. § 922(g)(1). At the close of the government's case-in-chief, Lynch's motion for judgment of acquittal was denied. Lynch renewed his oral motion on December 24, 2008 by filing a written motion for judgment of acquittal (Document #55). His motion will be denied.

**I. BACKGROUND**

In its response to the defendant's Rule 29 post-trial motion the government summarizes the facts presented at trial (Document #57). This succinct and accurate summary of the evidence at trial is presented here:

> [At trial the] government presented evidence that on August 4, 2005, Pennsylvania state parole agents Harry Gaab, Dave Dedura and Robert Martinez proceeded to Lynch's residence at 2651 Rubicam Avenue, Willow

1

Grove, Pennsylvania.Agent Gaab had decided to search Lynch's home because he was suspicious of Lynch's recent behavior. Members of the Abington Police Department and Montgomery County Detective Bureau backed up the parole agents during this search.

At approximately 9:20 p.m., Lynch walked out of his residence and entered the passenger side of a car driven by David Steele. As the car backed out of the driveway, agent Gaab and other law enforcement officers approached and ordered Lynch and Mr. Steele out. Both men exited the car and were detained. Agents Gaab and Dadura then entered and searched Lynch's home. In Lynch's bedroom, agent Dadura found a .40 caliber Taurus semi-automatic handgun loaded with 10 live rounds. The handgun was in Lynch's dresser drawer, and it was hidden under Lynch's clothes. On the bedroom's floor, agent Gaab found three live .40 caliber rounds. All thirteen .40 caliber rounds were manufactured by Remington. In close proximity to the handgun, the agents also found numerous letters addressed to Lynch, an empty pill bottle with Lynch's name on it, clothes that belonged to Lynch, and shoes that belonged to Lynch.

The agents notified Detective Daniel Fisicaro and Sgt. Michael Gallagher, who were waiting outside. These men entered the residence, photographed the items found in the bedroom, and collected the firearm and ammunition. The firearm was later examined by Detective John Finor, a ballistics expert. Detective Finor test fired the gun and determined that it was operable. The jury heard, via stipulated testimony, that the gun had traveled in interstate commerce, met the definition of a "firearm," and further, that Lynch was a convicted felon who was not allowed to possess any firearm on August 4, 2005.

The firearm and ammunition were sent to the Pennsylvania State Police Department. Corporal Allen Stewart testified that he swabbed the handle of the gun for DNA. The DNA swab from the gun was sent, along with a reference sample from Lynch, to National Medical Services (NMS) for DNA testing. Katherine Cross, a forensic biologist from NMS, was qualified as an expert witness and testified that the swab contained a mixture from two individuals, one of whom was the defendant. Ms. Cross explained the amount of DNA on the swab from the gun was consistent with a person (i.e., Lynch) touching the gun for a short period of time, and during that time the person's skin cells were transferred onto the handle of the gun.

The jury also heard evidence that Lynch was shot in the hand on July 15, 2005. Lynch gave a statement to Abington Police Department Detective Ken Stein on July 15th wherein he claimed "I was at my front door, around 5 a.m., I was going to unlock the door with a key, and something hit me in my hand. I called for my girl (Tasha) and told her that I was shot." Lynch said he did not see or hear anything prior to the shooting. A few days later, Lynch repeated this account to agent Gaab. In summary, Lynch told Gaab that he did not see anyone or hear the shot, and speculated that it may have been an ex-girlfriend who was jealous. Detective Stein testified about the investigation of the shooting, and described Lynch's residence on the morning of July 15, 2005. The detective found that the front porch storm window had been shattered. He saw blood on the outside of the front door, the vestibule walls, the kitchen, and the second floor landing. In the kitchen, he observed an empty plastic handgun box for a Taurus handgun. The box had no labels or paperwork identifying the firearm's model or serial number. Lynch gave the police consent to search his home, and the police seized the Taurus handgun box. When asked about the box, Lynch told Detective Stein "I seen the black box sitting on the porch when I got up. I pushed it aside when I got my keys out to open up the door. I thought it was a game box."

At trial, Lynch's attorney argued that Tasha Underwood (Lynch's girlfriend) shot him in the hand on July 15 and stashed the gun th in Lynch's dresser drawer. In response to this defense argument, the government introduced evidence that no person ever identified who shot Lynch, and no person ever explained why Lynch was shot. Further, the government introduced evidence that Lynch had motives to arm himself with this handgun; namely, that he carried large sums of money, drove expensive cars, and had assorted drug paraphernalia in his bedroom.

On December 17, 2008, at the close of the government's case, Lynch made a motion for acquittal which was denied. That same day, Lynch was found guilty by the jury of both counts of being a felon in possession. He filed a written motion for acquittal on December 24, 2008, two days after the Rule 29 post-verdict motion deadline.

**II. DISCUSSION**

**A. Lynch's Motion is Untimely**

Lynch's Rule 29 post-verdict motion for acquittal will be denied as untimely because it was filed outside the seven day time limit. Fed. R. Cr. P. 45(b); Carlisle v. United States, 517 U.S. 416, 420 (1996) (stating that rules 29 and 45(b) "are plain and unambiguous. If . . . a guilty verdict is returned, a motion for judgment of acquittal must be filed, either within seven days of the jury's discharge, or within an extended period fixed by the court during that 7-day period. There is simply no room in the text of Rules 29 and 45(b) for the granting of an untimely postverdict motion for judgment of acquittal, regardless of whether the motion is accompanied by a claim of legal innocence, is filed before sentencing, or was filed late because of attorney error").

In Carlisle, the motion was only one day late, however because the motion was "one day later than justice and equity demand," Id. at 430, the district court was required to dismiss it. No other rationale was required for the dismissal. As Lynch's motion was two days late (filed nine days after the jury returned a guilty verdict), this court has no choice but to dismiss it as time-barred.

**B. The Evidence Supports the Guilty Verdict**

Even if Lynch's motion were timely, it would be dismissed on its merits because the government's evidence overwhelmingly proved that Lynch possessed the firearm and ammunition. There is a high standard for overturning a jury verdict. In order to overturn

the jury's determination that Lynch is guilty, this court must find that the record contains *no* evidence from which a rational jury could have concluded beyond a reasonable doubt that he was a felon in possession of a firearm or ammunition.  See United States v. Voigt, 89 F.3d 1050, 1080 (3d Cir. 1996).

Here, there was very strong evidence that Lynch was a felon in possession of a firearm and ammunition.  The evidence showed (1) that Lynch constructively possessed the handgun and ammunition and (2) that he had motives to keep a gun and ammunition.  First, the contraband was found inside Lynch's home; in fact, the items were in Lynch's bedroom along with letters addressed to Lynch as well as an empty pill bottle labeled with Lynch's name.  Lynch's DNA was present on the handgun; it was found in his dresser under his clothing.  The ammunition was found under Lynch's bed near his other possessions, including the labeled pill bottle.

The determinative factors for constructive possession are (1) whether the defendant has knowledge that the object exists and (2) has the power and intent to exercise dominion and control.  See United States v. Garth, 188 F.3d 99, 112 (3d Cir. 1999).  However, the jury may draw an inference that a person constructively possesses an item if that item is found in the person's (even shared) home.  United States v. Morris, 977 F.2d 617, 620 (D.C. Cir. 1992) (citing United States v. Jenkins, 928 F.2d 1175 (D.C. Cir. 1991)).

Second, the evidence showed several motives for Lynch to possess a gun and

5

ammunition. On July 15, 2005, a few weeks before the gun was recovered at Lynch's home, Lynch was shot in front of his house. Additionally, Lynch possessed multiple cars, including a Lexus, as well as drug paraphernalia. He had a possible motive of protecting his property, as well as himself. The evidence showing that Lynch had been shot at his home where he kept valuable and contraband property is evidence from which the jury could conclude that Lynch had motives to possess a firearm.

### III. CONCLUSION

Lynch's motion is denied because it is untimely and because, even if it had been filed on time, the jury's verdict is supported by very strong evidence. An appropriate Order follows.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | **CRIMINAL ACTION** |
| Plaintiff | : | |
| | : | |
| v. | : | **NO. 07-101** |
| | : | |
| **FREDERICK ALBERT LYNCH,** | : | |
| Defendant | : | |

### **O R D E R**

**AND NOW**, this 6th day of April, 2009, upon consideration of defendant's motion for judgment of acquittal (Document #55), it is hereby **ORDERED** that the motion is **DENIED**.

                                                BY THE COURT:

                                                /s/ Lawrence F. Stengel
                                                LAWRENCE F. STENGEL, J.